PJG Consent SSA (Rev 09/10/21)                                          Kevin S Powers, Sr

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kevin S. Powers, Sr.,<br><br>                  Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of the<br>Social Security Administration,[1]<br><br>                  Defendant. | C/A No. 0:21-00085-PJG<br><br>**ORDER ON PLAINTIFF'S APPEAL<br>FROM THE SOCIAL SECURITY<br>ADMINISTRATION'S DENIAL OF<br>SOCIAL SECURITY BENEFITS**<br><br>☒  Affirmed<br>☐  Reversed and Remanded |

      This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☐    Supplemental Security Income ("SSI"): Plaintiff's age at filing: ___

☒    Disability Insurance Benefits ("DIB"): Date last insured: September 30, 2023

☐    Other:

Application date: March 21, 2018

Plaintiff's Year of Birth: 1969

Plaintiff's alleged onset date: March 21, 2018

**Part II—Social Security Disability Generally**

      Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

      A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the named defendant because she recently became the Acting Commissioner of Social Security.

capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  March 25, 2020

In applying the requisite five-step sequential process, the ALJ found:

Step 1:         Plaintiff was engaged in substantial gainful activity during the relevant time period:
                ☐ Yes   ☒ No

Step 2:         ☒ Plaintiff has the following severe impairments:

                [A]nxiety disorder, depressive mood disorder, post-traumatic stress disorder, degenerative joint disease and mild osteoarthritis of the right shoulder, mild right hip osteoarthritis, and mild osteoarthritis of the lumbar spine (20 CFR 404.1520(c)).

                ☐ Plaintiff does not have a severe impairment.

Step 3:         ☒ Plaintiff's impairments do not meet or medically equal a Listing. 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:         Plaintiff's Residual Functional Capacity is as follows:

                [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.2567(b) except the claimant can frequently climb stairs and ramps; never climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, and crouch and occasionally crawl. The claimant can frequently reach overhead with the right upper extremity. He is able to perform and sustain unskilled work, which is defined as no more than SVP 2 or reasoning level (RL) 2, for two-hour increments followed by customary breaks, and occasionally interact with the general public.

                ☐ Plaintiff could return to his/her past relevant work.

Step 5:         ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App'x 2.

                ☒ Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

                Photocopying Machine Operator (DOT: 207.685-014) which is light, unskilled SVP 2 work, with 38,000 jobs in the national economy; Bench Assembly (DOT: 706.684-022), which is light, unskilled SVP 2 work, with 193,570 jobs in the national economy; and Collator Operator (DOT: 208.685-010), which is light, unskilled SVP 2 work, with 48,500 jobs in the national economy.

Date of Appeals Council decision:  November 5, 2020

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were

reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S. Ct. at 1154 (citation omitted). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

I.   The ALJ did not explain her findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.
II.  The ALJ failed to properly assess the medical opinion evidence.

(Pl.'s Br. at 12, 20, ECF No. 21 at 12, 20.)

**Oral Argument:**

☐ **Held on** _____.

☒ **Not necessary for disposition.**

**Summary of Reasons**

**A.   Residual Functional Capacity Explanation**

Plaintiff argues the ALJ failed to explain how the residual functional capacity ("RFC") accounts for his mental impairments. A claimant's RFC is "the most [a claimant] can still do despite his limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting her conclusions with respect to a claimant's residual functional capacity. Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate

meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Additionally, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio, 780 F.3d at 636); see also SSR 96-8p. Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. Mascio, 780 F.3d at 636-37. The ALJ must "build an accurate and logical bridge from the evidence to [her] conclusions." Monroe, 826 F.3d at 189.

Plaintiff contends the ALJ failed to adequately explain how the RFC accounts for his moderate limitations in mental functioning. Specifically, Plaintiff asserts the ALJ improperly "played doctor" by classifying his mental health treatment as conservative, relied on isolated periods of improvement to find him capable of working, failed to account for contradictory evidence from Dr. James Way, and failed to include limitations related to interactions with co-workers and supervisors. In support, Plaintiff relies primarily on the Mascio court's holding that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" and remand based on the ALJ's failure to further explain how the RFC accounted for the claimant's limitations in

mental functioning. <u>Mascio</u>, 780 F.3d at 638. Relying on <u>Shinaberry v. Saul</u>, 952 F.3d 113, 121 (4th Cir. 2020), the Commissioner asserts there is no categorical rule requiring further limitations when a claimant has moderate mental functioning limitations and that, here, the ALJ adequately explained her RFC findings and those findings were supported by substantial evidence.

  Upon careful review of the ALJ's decision, the parties' arguments, and the records in this matter, the court agrees with the Commissioner. The ALJ found Plaintiff's anxiety disorder, depressive mood disorder, and post-traumatic stress disorder severe. (Tr. 13.) She then evaluated the severity of Plaintiff's mental impairments in light of the paragraph B criteria and found Plaintiff had moderate limitations in all four areas. (Tr. 14-15.) The ALJ supported her findings with discussion of and cites to the record evidence related to Plaintiff's mental functioning—Plaintiff's mental function report, hearing testimony, VA treatment records, and consultative examinations, including the mental status evaluation conducted by Dr. James Way. (<u>See</u> <u>id.</u>) In her discussion, the ALJ expressly considered evidence suggesting Plaintiff experienced more severe limitations along with contradictory evidence of less severe limitations. (Tr. 14) (noting that Plaintiff described memory problems and needing reminders to take his medications, but providers routinely described Plaintiff as alert and oriented and having an average fund of knowledge); (Tr. 14-15) (noting that Plaintiff endorsed trouble getting along with others and providers noted at times he appeared depressed, anxious, and hypervigilant, but that medical providers routinely found him cooperative and pleasant with spontaneous, coherent, and goal-directed speech and that Plaintiff indicated he was able to shop independently); (Tr. 15) (noting that Plaintiff alleged difficulty with concentrating, task completion, and focusing for more than 30 seconds, but he was prescribed medication to help with concentration and providers routinely found him alert and oriented with good attention and concentration); (Tr. 15) (noting that Plaintiff stated he sometimes forgot to

change his clothes or bathe, but providers routinely noted him to have good hygiene, grooming, insight, and judgment).

In addition, the ALJ included the following regarding Plaintiff's mental health impairments in her explanation of the RFC:

> The claimant alleges symptoms including trouble interacting with people, becoming easily stressed, . . . problems with task completion, . . . [and] tearfulness . . . . In terms of his daily routine, he stated that he generally stays in bed, then is able to prepare a simple meal[] and occasionally interact[] with others. His function report noted . . . mental difficulties with memory, task completion, and concentration, following instructions, understanding, and getting along with others. . . . (Hearing; 6E; 10E).
>
> . . . .
>
> With regard to the claimant's mental impairments, the claimant has a conservative treatment history consisting of medication management and therapy sessions about once every four weeks (Hearing). He stated that he lost his most recent job in March of 2018, due to problems getting along with others (7F/1). However, his providers often described him as cooperative and pleasant, with normal grooming and eye contact, which does not reflect the claimant's allegations of anxiety and constant hypervigilance (1F/9, 26; 3F/119, 180, 211; 7F/3). Accordingly, the undersigned has provided the above mental accommodations.

(Tr. 16-17.) The ALJ also expressly considered the relevant opinion evidence and prior administrative findings. (Tr. 18-19.)

Notably, Plaintiff does not allege specific evidence the ALJ failed to consider. Plaintiff alleges the ALJ incorrectly characterized his treatment as "conservative," but the record indicates Plaintiff did receive treatment about once every four weeks in the form of therapy or medication management. Also, the ALJ's use of the word "conservative" did not constitute a medical determination, as Plaintiff seems to suggest. Plaintiff alleges the ALJ found him capable of working based only on isolated periods of improvement. However, the ALJ expressly considered the longitudinal record evidence and Plaintiff offers nothing to suggest the ALJ misinterpreted the record.

Further, Plaintiff asserts that additional limitations were warranted to accommodate his moderate limitation in interacting with others. In this regard, Plaintiff contends the ALJ failed to explain why she did not limit Plaintiff's interaction with coworkers and supervisors. However, the ALJ expressly found persuasive the state agency psychological consultants' opinions that Plaintiff would do best with limited public interaction but could interact with coworkers and supervisors and found unpersuasive Dr. Way's opinion that Plaintiff would have trouble interacting with others and would require significant support to maintain adequate social functioning. (Tr. 18.) The ALJ further explained those findings were based on the longitudinal record showing routinely normal mental status examinations, conservative treatment, no inpatient hospitalizations, and notes indicating Plaintiff was cooperative, able to communicate effectively, and could shop independently. (Tr. 18.)

In sum, the ALJ in this case sufficiently addressed Plaintiff's severe mental impairments and explained why the psychological evidence and Plaintiff's statements supported a mental limitation to unskilled work for two-hour increments and occasional interaction with the general public. The ALJ's discussion of the record allows for meaningful review of these findings, her decision is supported by substantial evidence, and remand is not necessary.

B.   **Medical Opinion Evidence**

Plaintiff also challenges the ALJ's evaluation of the opinion evidence from consultative examiners Dr. James Way, Ph.D., and Dr. Adebola Rojugbokan, M.D. Plaintiff asserts the ALJ should have afforded these opinions more weight because they were the only opinions regarding his functional capacity from examining physicians.

Under the federal regulations applicable to Plaintiff's application, ALJs no longer "give any specific evidentiary weight . . . to any medical opinion(s)," but must consider and evaluate the

persuasiveness of all opinion evidence based on its supportability and consistency, the source's relationship with the claimant and specialization, and other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors and the ALJ must explain how they were considered. Id. The ALJ may, but is not required to, explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2)-(3). An evaluation of any medical opinion must be supported by substantial evidence.

### 1. Dr. James Way

As discussed above, the ALJ considered portions of Dr. Way's opinion throughout her discussion of the paragraph B criteria. The ALJ specifically noted Dr. Way found Plaintiff was alert and oriented; correctly able to follow two steps of a three-step command; had an average fund of knowledge; appeared depressed, anxious, and hypervigilant; was cooperative; exhibited spontaneous, coherent, goal-directed speech; had adequate persistence and concentration and was able to provide abstract and concrete responses to two items measuring reasoning skills; had a history of depression, anxiety, and PTSD; and presented with good grooming and hygiene. (Tr. 14-15) (citing Tr. 693-94).

The ALJ offered the following assessment of Dr. Way's opinion in her RFC discussion:

> The consultative examiner, James Way, Ph.D., opined that the claimant would have trouble interacting with others and would require significant support to maintain adequate social functioning (7F/4). The undersigned finds this opinion to be unpersuasive. The opinion is unsupported by the examiner's interview with the claimant, which showed he was alert, responsive, and cooperative with spontaneous and coherent speech (7F/3). Additionally, it is inconsistent with the longitudinal mental status examinations, which show[] that the claimant is cooperative, can go shopping independently, and appears to be able to communicate effectively.

(Tr. 18.) Thus, the ALJ correctly considered and explained the key factors of supportability and consistency.

Plaintiff argues Dr. Way's opinion was supported by his examination and focuses on Dr. Way's findings that Plaintiff would likely require "significant support to maintain adequate social functioning in an occupational setting" and "may experience very inconsistent functioning in" concentration, persistence, and pace. (Pl.'s Br. at 22, ECF No. 21 at 22) (citing Tr. 694). Specifically, Plaintiff contends the ALJ ignored Dr. Way's indications that Plaintiff appeared depressed, anxious, hypervigilant, and fidgety and had inconsistent eye contact, depressed tone of speech, restricted affect, and was irritable and tearful at times. (Pl.'s Br. at 23-24, ECF No. 21 at 23-24.) However, the ALJ clearly considered many of those observations in her discussion of the paragraph B criteria (Tr. 14-15) and she was not required to explicitly analyze every piece of evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) ("We consider all evidence we receive, but we have a reasonable articulation standard for determinations and decisions that does not require written analysis about how we considered each piece of evidence."); see also McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) (stating that "the ALJ need only review medical evidence once in h[er] decision").[2]

Plaintiff further objects to the ALJ's acceptance of "the opinions provided earlier in the record by non-examining state agency chart reviewers" over the opinion of Dr. Way. (Pl.'s Br. at 23, ECF No. 21 at 23) (citing Radford v. Colvin, 734 F.3d 288, 295-96 (4th Cir. 2013) (noting medical opinions by non-examining physicians are typically afforded less weight than those by examining and treating physicians). As discussed above, the new regulations do not require the

---

[2] The ALJ also omits from her written decision any discussion of other portions of Dr. Way's report that would bolster her finding. For example, Plaintiff scored 28 out of a possible 30 points on an MMSE, exhibited normal cognitive speed and Dr. Way opined Plaintiff could complete self-care tasks and basic instrumental activities of daily living independently and could learn a variety of tasks, follow instructions, and make appropriate adjustments and decisions in an occupational setting. (Tr. 694.)

ALJ to grant more weight to the opinion of an examining physician. Further, the state agency psychologist who reviewed Plaintiff's file on reconsideration discussed Dr. Way's opinion at length. (Tr. 83, 88-91, 95-98.) Ultimately, the state agency reviewer discounted Dr. Way's opinion as unsupported by the evidence but he also accounted for many of Dr. Way's findings in his consideration of the paragraph B criteria and his mental RFC. (See Tr. 88-91 (finding moderate limitations in all four paragraph B areas after considering Dr. Way's report and noting Plaintiff had successfully worked with his alleged symptoms for the prior twenty years, Plaintiff's score on the MMSE negated his assertion that he could only concentrate for seconds at a time, and that Dr. Way's opinion was consistent with and supported by the evidence in terms of observed behavior but inconsistent in terms of sustainability of effort); Tr. 95-98 (finding additional mental RFC limitations than on initial review but noting Dr. Way's opinion was not entirely persuasive because it relied heavily on Plaintiff's subjective reports, was unsupported by the totality of the evidence, was without substantial support by the medical source who made it, and overestimated the severity of Plaintiff's limitations)). The ALJ found these prior administrative medical findings persuasive, properly and expressly considered their supportability and consistency, and incorporated their findings in the RFC. (Tr. 18.)

  **2. Dr. Adebola Rojugbokan**

Plaintiff further alleges the ALJ failed to adequately explain her rejection of consultative examiner Dr. Rojugbokan's medical opinion and should have granted it more weight than the nonexamining source opinions.

The ALJ assessed Dr. Rojugbokan's opinion as follows:

The consultant opined that the claimant is able of sitting, standing, and walking for short distances, would have trouble with postural limitations due to pain, with no limitation to overheard reaching (4F/5). The opinion is unsupported by the consultant's examination, which showed that the claimant is able to ambulate

>    without an assistive device, had a normal range of motion, and had pain upon palpitation (4F).  Additionally, the opinion is inconsistent with the longitudinal medical record which showed that the claimant routinely had a normal gait and did not use an assistive device, had 5/5 strength, and had positive shoulder imaging and signs showing pain to palpitation.

(Tr. 18.)

Plaintiff contends the ALJ's explanation does not permit meaningful review because it fails to discuss the entirety of Dr. Rojugbokan's report.  As discussed above, an ALJ is not required to expressly consider every bit of evidence in her decision.  Further, the ALJ did expressly consider most of Dr. Rojugbokan's findings elsewhere in her RFC explanation.  (See Tr. 17) (noting a consultative examination showed pain with palpation to the lumbar spine, right shoulder, and right hip, decreased lumbar strength due to pain, and diminished right hip and shoulder strength, but mostly normal range of motion, negative straight leg raise tests, and otherwise normal findings).

Plaintiff highlights Dr. Rojugbokan's opinion that Plaintiff's "posture, such as climbing, stooping, bending, balancing, crawling, kneeling and crouching will be difficult."  However, this finding was based on Plaintiff's subjective reports, Dr. Rojugbokan offered no opinion as the extent of any postural limitations, and the ALJ included postural limitations in the RFC.  (See Tr. 679) ("The patient's posture . . . will be difficult as the patient reported that all these activities hurt.").  Accordingly, Plaintiff fails to show the ALJ's alleged error impacted the ultimate decision.

Based on the foregoing, Plaintiff has failed to demonstrate that the ALJ's decision to give little weight to Dr. Way's and Dr. Rojugbokan's opinions was unsupported by substantial evidence.  In fact, it is clear that the ALJ, as part of her duties in weighing the evidence, properly considered these opinions in accordance with the applicable factors and legal authority.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hayes v.

<u>Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts in evidence).  Thus, the court finds Plaintiff has not shown that the ALJ's decision with regard Plaintiff's RFC and the weight afforded the various medical opinions and prior administrative medical findings was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## ORDER

☒ **Affirmed. Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☐ **Reversed and remanded pursuant to ☐ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐ **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

December 28, 2021                                         Paige J. Gossett
Columbia, South Carolina                          UNITED STATES MAGISTRATE JUDGE